Our next case for argument is 24-1075 Crawford v. Collins If it's easier for you, Mr. Wells, you can sit at council table. I think you want to come to the podium, whatever works for you. I wouldn't know. May I please be court? We're here today on another blue water case. It perhaps started with Procopio and has gone on since the Blue Water Navy Act. And the issues today are legal in nature. It's not factual, as my friend Mr. Breskin would say. I guess the first question is, did the board use the correct standard? If so, if not, was the court below an error not holding them to that correct standard? I think the second issue goes more to what basically is a functional abandonment of the consideration of the facts and an inability to explain why they didn't do the facts. If I could briefly address what was probably the most egregious of it. In the case before the board, we presented buddy statements from the pilot of a helicopter that took Mr. Crawford to Danone. Danone, he had business to deliver some documents there. Isn't this all fact-based? Your Honor. Where he was is a question of fact beyond our jurisdiction. The definition of offshore is statutory. It is. And that we give jurisdiction over. That's an excellent question. And if you'll give me about a second just to tie it all together. Because this is what I say when I talked about the functional abandonment of consideration, which implicates all kinds of fundamental fairness and due process concerns, which are certainly legal issues. But in this particular case, what the board did was ignore the facts. Ignore the fact that the pilot of an aircraft knows where he's going. Now, I think we've got to assume that the pilot knew he was going to Danone. He could only go to South Vietnam, North Vietnam, or China. And if it had been the latter two, he would have been shot down. Against that, the board applied a lack of evidence in the shipboard deck wall. Well, the problem with that is, first of all, it's pretty well settled, the absence of facts. Again, this is a legal issue. The absence of facts is not facts. Or absence of evidence is not evidence. Secondly, the guiding directive for that particular deck log, or how to do a deck log, I did enough of those when I was at the Navy, doesn't require that kind of detail. You cannot put into a deck log everybody that leaves that ship. When you think about a carrier in a war zone launching 75 to 80 sorties a day, combat sorties and logistic sorties of this kind, it just doesn't make sense. So I think what implicates the legal issue here, Judge Lurie, in response to the question I was hoping you were asking, is that when you abandon the facts, that is a legal issue. For example, if the board had found that the grass out there in Lafayette Park is orange with purple polka dots, that would be a legal issue. Even though we say it's factual, we know because we have evidence of pictures and we have evidence of personal experience that it's not really a factual issue. There's facts and there's no facts. There's facts and there's speculation. And that's what the board did, was engage in speculation. But to go even to more of a legal issue is they used the wrong standard. How do we know that? The limits and baselines that are part of the joint appendix. If you look at joint appendix number 91 and compare it with even the ship locator tool on joint appendix 62, you'll see that they look at just about the same. The line does not start at the coastline. It starts at the baseline, which runs before the outermost islands. That was why it was so important to consider what was in that State Department publication, limits and baseline. And, again, I would refer you to the joint appendix. I should have been a little bit better organized on that. My apologies. Joint appendix number 86, where it shows the various points, and it shows their actual distance to the mainland. And none of those are 12 nautical miles. I'm sorry. None of them are what did you say? None of them are 12 nautical miles from shore, as the board held. The board said 12 nautical miles from shore? No. The government has said in its brief that the board's reference to shore in that context was effectively a slip of the tongue, that everybody agrees that the distance is the boundary line that is described, the baseline described by Congress, plus 12 miles. So that is undisputed. And, in fact, as I read the regional office's decision, they used that as their baseline. So setting aside the, if it was, a slip of the tongue by the board, is there any indication that anybody applied the wrong legal standard? Judge, if I may respectfully disagree. Sure. If there was one time, I would say that, yeah, that's possible, that that particular board member got it wrong. But there were three different references in there to, and I can get the page numbers if you'd like, but it was in the board opinion three different times where they used the 12 miles from shore standard. And so I think that's more than just a slip of the tongue. Even if it was a slip of the tongue, Your Honor, we're, as we all know, we're limited to the record. I mean, I could probably give you a lot of details as to why I don't think it's a slip of the tongue, but that wouldn't be proper. The record itself says 12 miles from shore. We've had, I'm sorry, I just went off and started to do what I said I wasn't going to do. I think if you look at the rejection of the dead reckoning track on Joint Appendix 40, that is, in fact, some more evidence that this was not a slip of the tongue. Because if you look at JA 40, I'm sorry, let me get to it here. If you look at JA 40, it basically, we'll say, shows that the area and the dot where the ship was at 0300 is way more, is off the coastline. This was before the board, okay? If they hadn't used it, and I guess what I'm trying to say is if they used the proper standard, they would have said, hmm, okay, well, this obviously isn't 12 miles from shore. It's obviously somewhere else, but they didn't. They kept using 12 miles from shore. Okay, what is the provenance of this particular document? Because it's marked in the lower left-hand corner, Military Veterans Advocacy, which is, I take it, a group you're associated with. Yes, Your Honor. Right, so where does this particular information come from? Yes, and if you'll notice on the right, there's another logo, and that's the Blue Water Navy Vietnam Veterans Association. Right, I can't read that one, but I'll take your word for it. Okay, I know, Your Honor. Well, that's fine. And Blue Water Navy is part of the Military Veterans Advocacy. Where it comes from is the commander of the Blue Water Navy actually did the dead reckoning on this chart on JA-40, and I believe that's in the record. His name is Michael Gates, and he's in a former Navy and worked strongly on getting the whole Blue Water Navy situation adopted, helped us prepare for Procopio, and so on and so forth. I actually have checked his chart and his belief here, and it's accurate. There's no question that this chart was accurate. Part of the problem was the board obviously didn't understand nautical issues because they said it doesn't correlate to the deck wall. It does. If you look at it, the ship was in an underway replenishment mode and it was coming down at a general south-southwest track. When you're in an underway replenishment, you've got about 200 foot separation when you're dealing with a carrier. It's 100 foot and 120 foot with a destroyer and a span wire connecting you all together. You don't want to change course at speed. So under a normal situation, that carrier probably would not have gone into the designated area, but in that special operations, underweight replenishment, it did. If you look at the deck logs, once they had the breakaway, it wasn't long before they turned around and headed back up north because they did want to keep those carriers away from any short batteries that the Viet Cong or the NVA would have had. I hope that is responsive to what you're asking. I'm starting to get into my rebuttal time. Do you all have any other questions, Your Honors? No, we'll save the rest of your time for rebuttal. Thank you, Chief Mone. May it please the Court. This Court should dismiss most of the challenges that Mr. Crawford brings before the Court. The one arguable legal question, which my friend Mr. Wills discussed with you, Judge Bryson, is whether or not the Veterans Court erred by not acquiring the board to apply the correct standard. The board used the term shore once. I think it's understandable given that the Blue Water Navy Act statutory definition of the covered waterways is titled Determination of Offshore Waterways. And so I think it is a normal offhand use of the word shore to say we are determining 12 nautical miles from the shore. There's no indication aside from... Did they otherwise use the word baseline? That's the standard they should have used, right, 12 miles from the baseline? Is that correct? They did not use the word baseline. They did before they got to the analysis, though, both the RO and the supplemental statement of the case, the board and the Veterans Court recited the fact that they were operating under the Blue Water Navy Act definition of offshore waterways. Where did the board do it? Appendix 26, you're on it. Appendix 26. At the bottom of the page, before it gets to its analysis, it says on January 1, 2019, the Blue Water Navy Act went into effect extending the existing presumption of herbicide, Agent Orange exposure under 1116 to include Vietnam veterans who served offshore more than 12 nautical miles for the Republic of Vietnam during the period beginning. Yeah, but that doesn't demonstrate, does it? It doesn't seem to me to clearly demonstrate an understanding that the 12 miles should be measured from the baseline rather than from the shore. Well, I suppose that's true, although the fact that it is applying the statutory points, which do... Well, it's mentioned the right statute for shore, but, I mean, look, where the 12 miles is to be measured from has kind of bee-bopped around, right, in time, hasn't it? I mean, I think we may have said shore and Congress may have said no, not shore, baseline, right? Well, so, I mean, I think it's telling. In Mr. Crawford's brief, he keeps saying that the RO and the board relied on a 12 miles from the coast. That's not what they were doing. I think shore is a natural offhand reference to the eligible waters under the Blue Water Navy Act, but more importantly here... If that were true, would Congress have needed to come along and statutorily change what we said? Yes, because I think what qualifies as the baseline is determined by islands and different geographic features and is complicated, and that's why Congress didn't leave it up to interpretation in the Blue Water Navy Act. It said geographic points. So I think it's also important here to remember that the RO and the board were expressly relying on the part of VA that does military records research who looked at all of the available evidence to determine... Is the baseline at the shore or further out in the water? Mr. Wells and I had a conversation about that earlier. I think it's from the baseline. I mean, that is the express terminology used. That does not answer my question. I don't think the baseline and the shore are necessarily synonymous with each other, Your Honor. And particularly if you view the shore as the coast of the mainland itself as opposed to islands, for example. Except that Black's Dictionary defines shore as the line between the high water and low water marks along the coast. Well, I understand, but... So it's not... Coast is a less precise term. If I say this weekend I'm going out to the Delaware shore, I'm talking about the beach that's part of the mainland, not islands. But there's no indication that the board was using that sort of offhand terminology for shore. It had just recited the Blue Water Navy Act, and it in fact had information before it that the researchers, who certainly know exactly where the line is drawn in the statute, those researchers had determined that the USS Hancock and Ranger had not entered into the territorial waters. And so that is the evidence that the board was relying on. The idea that the board should have done its own sea charting exercise seems pretty far afield here. We want the board members to be relying on the knowledgeable experts within the VA and the military who provide the evidence of where ships were to determine whether or not they entered into the eligible offshore waterways. The other thing is that it's unclear to me how the allegation that the board used the wrong standard... Now, let me make sure I've got the right references for the material that the board was relying on. You're referring, I take it, to the material at 55, 56, 57, 58, and up to 60. Is that the material that the board was relying on? I mean, I think they relied on through 65, Your Honor. I think 63 through 65 are about the helicopters, but the other waters. That's it, right? That's what we have in the record representing what the board was relying on when it made its decision. Right, and the deck logs and the other things that I believe these researchers relied on were also in the record before the board. But I don't think the board member did an independent determination, his own sea charting exercise, if you will. He relied on the experts within VA who compare the deck logs and the other information to make his own determination. Is there a dispute, counsel, about whether the material being relied on in, like, the 56, 57, the 60, whatever range, whether that properly calculated from what we might think of as the shore, i.e., the sort of beachfront area, or did it properly calculate from what everyone would say is the baseline, which is the point that it's supposed to be? Is there a dispute between the parties about what it was actually calculating in these documents? I don't believe so. Mr. Crawford's brief does not suggest that that evidence was using the wrong standard. The allegation that there was a wrong standard used here seems to be simply from the board's one usage of the word shore, but again... Well, the problem is it had zero usages of the word baseline, so... Right, but it also didn't use the word coast, so I think the question, you know, as we call it, you know, perhaps a regrettable, arguable misspeak, should it have used the word baseline, that would be clearer, but I think it is still... Well, I mean, you do agree that the fact they used the word shore is incorrect. I don't know, Your Honor, because the statute says, the 1116A says it is determining the eligible offshore waterways, offshore, so 12 nautical miles offshore. Correct, so not onshore, offshore. Right, Your Honor, but... So not the shore, but off of the shore, correct? Correct, those geographic points... So is it correct, or is it incorrect, to say shore? I don't know the answer to that, Your Honor. How could you not? If the statute says we're going to measure from a place offshore, we're going to take it offshore, then being on the shore can't be the correct place to measure. I see what you're saying, Your Honor. Yes, I mean, that is why we said it was a regrettable misspeak by the board, but there's still no indication that the board member looked at any of the points where the USS Hancock was and said, well, you are not within 12 miles of any incorrect standard. It simply said, all of the naval deck logs show that your ship was far outside, and the only evidence you presented that your ship entered is at appendix page 40. It could not verify where that map came from, nor could it verify the data it was showing, and in fact, the board made a credibility determination that that one point inside of the territorial sea, which again, that map is from Mr. Crawford's organization, the one it's represented with. Where the board on page 27 used the word from shore, here's where it seems, unless I'm mistaken, I think here's where it's relying upon those pages, 56, 57, and I'm just a little uncertain. It says, after determining each ship's location from deck logs and other official records, it was determined by VA researchers that neither ship was 12 nautical miles or closer to the Vietnam shore. Where can I actually see the determination by the VA researchers? At 56, appendix 56. Page 56. I'm sorry, getting past that. I'm sorry, 60, Your Honor. So 60 is the determination as to the USS Ranger, and 61 is the determination as to the USS Hancock. So where... walk me through it. On page 60, what you said is the determination as to the USS Ranger. Where exactly is it the veteran ship did not travel in the territorial waters of the Republic of Vietnam? Is that the determination right there? Yes, Your Honor. And there's no contention in Mr. Crawford's brief that these researchers were using the wrong standard. There's no contention that the supplemental statement in the case, which expressly relies on that and references the Blue Water Navy Act at appendix page 57, was using the wrong standard. The only allegation that there was an incorrect standard is the one reference to shore by the board. The Veterans Court did not find that to be... How do we know? I mean, they just say territorial waters. How do we know where they were measuring from to determine what constituted the territorial waters? I mean, there is a map that is provided at appendix page 62, which shows where the Blue Water Navy ship locator dashboard had demarcated the territorial waters versus the blue water that's covered versus the brown water. You know, I don't know if that's true.   I'm not a map reader myself, Your Honor. So is that blue area, that is the territorial water or the territorial waters plus 12 miles? That's how I understand it. Which of those is it? What's that? I'm sorry. Which of those is it? I think it's the outer boundary there. So territorial waters plus 12 miles. Well, the territorial waters are the 12 miles. 12 miles from a baseline is the territorial waters that are covered by the Blue Water Navy. Well, but there's a baseline. Right. And then you go 12 miles from the baseline. So my question is, is this marking the baseline or is it marking 12 miles beyond the baseline? I think it shows both, Your Honor. The outer line is the 12 miles. So that is, the ship needs to enter that outer line. We're looking at 62? I'm looking at 62. 62 has orange, which is mainland, as I understand it. This is a very... Oh, I'm sorry. My map is in black and white, Your Honor. My map is in black and white, so I apologize. I think orange says under the legend, and brown water. Right, doesn't it say brown water under the legend for orange? See there on the bottom left? The legend? Well, that's... I think that's the country, but the legend is a little confusing. It says brown water. It sure is, because I think by... But I think that's the country. Brown water is not the ocean, right? Whatever it is. Correct. Okay, but you can see... I mean, I think it could be the bays and harbors, though, Your Honor, so I don't want to say entirely. Well, but I know enough about geography to know that this... Cambodia is... In between Cambodia and the sea. I agree. Now that you explained the coloring, I agree with you. It seems to be showing the... All right. So all I say is I cannot tell from looking at this exactly if it is showing the baseline or if it is showing the territorial waters. I believe, given that the legend for the outer strips says blue water, it is showing what is the eligible offshore water. Well, because you're assuming they measured from the right place. Well, there's been no allegation that they didn't, that the researchers didn't, or that the RO didn't. The allegation here is that the board member didn't do so because of the reference to shore. That's the challenge that Mr. Wells is raising here, and the Veterans Court simply didn't find any evidence to support the contention that the board, though it used the word shore, was applying anything but the correct standard based on the evidence that was presented. Well, they used the word shore, which indicates they're applying the wrong standard by using the word shore. You pointed us to these pages and said, okay, they may have misspoken, but they then demonstrated what they were relying upon, which you pointed us to these pages, and you suggested this material that they rely upon clarifies that they didn't do it erroneously. So they didn't have to allege this material was erroneous. You pointed us to this in order to use this to overcome the clear mistake in the board's opinion. And so you're the one who has to prove to me that this demonstrates that the board was not measuring from shore. He doesn't have to prove to me the other way around because the board said the wrong thing. And so if you're going to point me to this material, this material has to make it clear to me that even though they had a slip of the tongue, they measured from the right place. And so I'm struggling to see that. Well, I mean, one thing would be, if looking at appendix page 40, which is the map that Mr. Crawford relies on, which shows arguably the only data point to suggest that either of his ships entered the eligible offshore waterways, right, that map is from the NVA, the Blue Water Navy Vietnam Veterans Association. So I assume that Mr. Crawford accepts the territorial sea marker in that map. What page are we on? Appendix page 40. This is the map that Mr. Crawford relies on to show that for one moment in time, he alleges the USS Hancock entered what he considers the territorial waters of Vietnam. It is unclear. The board said this is an outlier. It couldn't rely on this. It did not find it credible and persuasive. The Veterans Court found no clear error in that, so that's not something this court can review. There has been no suggestion that had the board been applying the wrong... applied the right standard versus applying the wrong standard, that there'd be more data points to suggest that he had entered the territorial seas of Vietnam. There's no argument that these other plot points on this map from the USS Hancock are within the correct definition of the offshore waterways versus the incorrect standard. So again, it comes down to just this one data point, and it is the only time the USS Hancock entered what Mr. Crawford believes to be the territorial sea. So this suggestion that there was a wrong standard applied doesn't seem like it would change the fact that the board did not find this evidence of the USS Hancock entering the territorial sea to be credible and persuasive evidence, which this court obviously can't overturn. Well, I don't know, because now you're sort of wading into a harmless error argument that wasn't made by anyone and that I think would necessitate some fact-finding, which I surely can't do. Well, I don't think... I mean, this court can make a harmless error analysis, but again, we don't believe that the board applied the wrong standard. The Veterans Court did not agree with Mr. Crawford that the board had applied the wrong standard. And again, the only evidence that... What do I do if it's unclear? You tell me, like, objectively in the law, what do I do if it's unclear to me whether the board applied the correct standard or not? Well, I think the problem is that's really a reasons and bases question. Did the board sufficiently explain that it was applying the Blue Water Navy Act standard? The Veterans Court found that it did and that it set forth that it was applying the Blue Water Navy Act standard, and it was riling on evidence... But don't I review that de novo? That's a legal question, right? What is the legal standard? Well, I mean, you're saying that the problem is you don't think the board adequately explained exactly how it was applying the standards. No, wrong. The problem is the board used the wrong... They actually articulated the incorrect standard by saying measured from shore. The board definitely articulated the incorrect standard. You'd like me to wash it away as a slip of the tongue, but I'm not... Unfortunately, you haven't walked me through to demonstrate to me how the opinion makes it clear that despite using the wrong words, they actually measured from the right place. And that's what I'm struggling with. So what do I do in this situation? Do I have jurisdiction? Do I not have jurisdiction? If there is this kind of confusion, do we send it back? I don't believe the court has jurisdiction. I think these are all, at their base, quintessentially factual determinations made by the board as to the evidence or their application of law to fact. Is it a factual determination whether you measure from shore or from the baseline? No, but again, the only indication... That's a legal determination. That is a legal determination. The Veterans Court reviews in the first instance and found that it had applied the correct standard. But we also review that de novo. True, Your Honor. But the fact is that the only suggestion here that the board applied the incorrect standard and that it would make a difference in this case is that one offhand reference to the word shore. And the only data point it could affect is that one dead reckoning data point which the board found to be not credible. So a remand here to apply, to more clearly expressly apply the Blue Water Navy Act standard would lead nowhere because the only data point he presents that his ship entered the territorial waters is a map that he says shows what he believes is the territorial waters, right? And so it would not change the fact that the only evidence that his boat entered any definition of the territorial waters was found to be not credible and persuasive. Unless the court has any further questions, we'd ask the court to dismiss in part and affirm. Your Honor, if I could focus you back on Appendix 40, as my esteemed colleague, Mr. Breskin, pointed out. It does show one data point. It actually shows a lot of data points, but one data point showing inside territorial sea or the offshore area, however you want to describe it. And that's all we really have to show. But as to the accuracy of this chart, we know the geographic points of the baseline because it's in the Blue Water Act. But didn't the board reject this chart and conclude that it wasn't credible and that this point that you showed that there is no evidence to support the idea that the USS Hancock was actually in that location? Judge, they rejected and said it was not credible that the pilot knew where he landed in Da Nang, Vietnam. So it's... But I can't challenge that. That's a question of fact. Well, it is. Don't squirt around it is, it might not be. It is. It's a question of fact. I can't decide whether it was credible or not credible. That's a question of fact. I understand that, but it also indicates due process if they apply the wrong standard. If you put in the standard that's... If we say this is the federal circuit and the board finds that it's really a D.C. circuit, something's wrong there, and it offends both fundamental fairness and due process, which is definitely a legal issue. I do not understand anything you just said. Okay.  Sorry. Let me ask you this. Suppose we were to conclude that the only problem in this case was the board's statement, their reference to shore. Would you think that a remand to the Veterans Court contemplating possibly a further remand to the board...  ...would be an appropriate remedy? And when I ask that, what I'm really asking is, do you realistically expect you would get anything from such a remand? Yes, we will, because... Keeping in mind that we would be asking only for clarification of the use of the word shore, did they mean to say territorial waters slash baseline to refer to the statutory standard as opposed to 12 miles from the coastline? That's an interesting question, Judge Bryce. We would actually... Keeping in mind that the premise of my question is you don't get to litigate any of the rest of the issues in this case. I understand. That would be it. Do you get anything from that realistically? Realistically, it's better than a dismissal. And the Veterans Court may choose to then allow us to provide additional information, and I think would be appropriate on their part. So, yes, we would look with favor upon a remand, Your Honor, if you would, in the court's wisdom, be willing to do that. But, you know, I think... You know, when this whole thing came up under Pro Copio and under Congress, you know, there was some built-in confusion. I know Judge Lori, in your Pro Copio concurrence, said that, you know, geez, there was some ambiguity, and it may even have gone out past what we were calling at the time the territorial sea line. It's... And it does need to be clarified. It needs to be clarified because these types of errors are being made constantly. Well, it seems to me that the statute is about as clear as any statute ever gets. It gives you the exact coordinates of the line that is... If you're within it, you're covered. If you're not, you're not. Exactly, Your Honor. And if you'll notice, since I was starting to say that... I don't know what clarification is needed to the guideline given by the statute. The only question is, did the board comply with the statutory requirement? The problem is the board, and, you know, with all respect to Mr. Bruskin, talking about the so-called VA experts, they don't understand how to plot. I'm sorry, they don't understand... They don't understand how to plot. You know, even the ship's locator tools. What it does is take the headings, for example, on Appendix 32, it takes the headings, those 0, 8, 1,200, and 2,800 fixes, and then uses them for the ship locator tool. It does not measure... But now we're back in the realm of pure fact. I understand, sir. I was just trying to explain. All right. In the same way, you know, on Appendix 40, we do have the latitude and longitude marked there, and it's pretty... If you look at it, you know, it kind of gives you an idea. That's why I'd say, sure, we'd take the remand, because based on this record and based on what was before the board, we would be able to say, look, this is where it starts. It correlates completely with statute, and therefore, you know, it should go to the veteran. Judge, and Judge Moore, I hope you don't think I was giving you a hard time. I wasn't trying to dance around. I was just trying to perhaps explain... You were doing a jig right there at the podium, is what you were doing. I'm sorry? I said you were doing a jig at the podium. You were definitely dancing around. You're trying to convert fact into law. Look, when you're like this, you have to dance when you can. But I guess, to me, the whole problem with perhaps the lack of expertise at the board really does offend due process. I don't know how to fix that. I'm not sure that this court can, because it's more than just this case. But it is symptomatic of the fact that, you know, Congress intended this to be a non-adversarial system in which the veterans got the benefits they deserve, and unfortunately, through... ...evolvement, it has become anything but. Yes, Your Honor. Again, if I danced too much, I apologize, but... No problem, Mr. Wells. We thank both counsel. This case is taken under submission. Thank you, Your Honor.